The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having a matter in the form of business before the Honorable United States Court of Appeals for the Fourth Circuit must withdraw now and give their attention, for the Court is now sitting. Godspeed to the United States and His Honorable Court. Good morning. We'll hear from Mr. Zorno. Thank you, Your Honor. Your Honor, may it please the Court, Mr. Wise, my name is David Zorno of Skadden Arcs, and I represent Kenneth Ravenell. Of the 14 counts the government lodged against Mr. Ravenell and his co-defendants, 13 resulted in not guilty verdict. Mr. Ravenell was acquitted on six of the seven counts against him, but his loan conviction should be reversed. Because of instructional errors, Mr. Ravenell was prevented from having a jury decide the applicability of the statute of limitations as required by law, and it is highly likely that he was convicted of something that is not a crime under Section 1957. A defendant in a criminal case is entitled to a jury determination on every issue the government bears the burden of proving beyond a reasonable doubt. That's fundamental, but it didn't happen on the one count of conviction in this case. Jury instructions matter. They are not technicality. Here the District Court usurped the jury's role, similar to the Lindbergh case that was decided recently by this Court, by treating the statute of limitations as a matter of law, contrary to precedent in this circuit, an error that does not withstand harmless error review, and it committed plain error by failing to equip the jury to properly evaluate the 1957 prong of the conspiracy by not explaining the safe harbor provision. Mr. Zyrdok, can I ask you, I have a couple of questions about the limitations issue, and I have a couple of framing questions that I think we agree on, but I just want to make sure that we do so I can get to what I think is the thing that I think is part. So I think you already said this. You agree that statute of limitations is not an element of the offense, correct? It is not an element, Your Honor, but if I may. Well, no, I have a couple. You further agree that there is no overact requirement under this statute. Correct. You further agree, I think we said and other courts have said, that once a conspiracy starts, the defendant remains a member of the conspiracy until one of two things happens. Either the conspiracy as a whole terminates or be the defendant withdraws. Once you're in a conspiracy, those are the only two ways out, right? I would add, Your Honor, that, and perhaps this is an analog to the termination of the conspiracy, but you also talk about situations in which the central purpose of the conspiracy has been accomplished. Absolutely. And I guess I'm viewing those as termination, right? You and I finish our illicit partnership in crime and we go our separate ways and it's done. Great. And you also agree that under Smith v. United States, the burden is absolutely on the defendant to prove withdrawal. I agree with that, although this is not a withdrawal case. No, I know. I understand. But of the two ways out, we agree the burden is on the defendant for one of the two. Okay. So then let me ask you about a case that's cited in the government's brief that I didn't see responded to in yours, and that is our 1986 decision in United States v. Walker, which where this court said, quote, once a conspiracy is established, it is presumed to continue unless or until the defendant shows that it was terminated or he withdrew from it. I agree it doesn't overtly say the burden is on the defendant, but why doesn't the language the defendant shows suggest that the burden of proof with regard to whether the conspiracy ended is on the defendant, not the government? Because, Your Honor, that case predated Smith v. United States, in which the Supreme Court says, once the defendant raises the statute of limitations, the burden is on the government to prove it beyond a reasonable doubt. And United States—  In the course of then holding that the defendant has to prove withdrawal, do you think Smith, in the course of holding that the burden of proof on a different issue is on the defendant abrogated our decision on that point? I would refer the court to the United medical case—I'm sorry, United States v. Fort Smith-Having. The government must prove beyond a reasonable doubt that the offending agreement continued into the five-year limitation period. Your Honor, withdrawal is a red herring in this case. I found it very instructive in reading the Smith case, the opinion by Justice Scalia, to go back to the Grunewald case of 1957, which was part of a trilogy of cases. And the Supreme Court in those cases was very concerned about the possibility that given the elasticity of the conspiracy statute, that the government would come up with theories that would in effect abrogate the statute of limitations as applied in the conspiracy context. Now, in that situation, it was the idea that concealment of the conspiracy in effect extends the conspiracy, and the court found that that just eradicates, eviscerates the statute of limitations. And the court very wisely said the crucial question in determining whether the statute of limitations has run is the scope of the conspiratorial agreement. And in this case— I have some questions about that, but I have one last thing on this threshold point of where the burden is. So here's—let me just phrase for you what I think is my biggest concern about saying the government has to prove the conspiracy didn't end. So imagine that the government has the burden of proving beyond a reasonable doubt that the conspiracy wasn't over. I don't understand how the government is going to do that except by having to provide evidence of an overt act, which seems a little strange to me given that under this statute, the government is never required to— So I guess I'd just like you to address my concern that this suggests that the defendant can just assert the conspiracy was over, and by doing that, he imposes a burden on the government that the government does not have, which is the burden to show an overt act in furtherance of the conspiracy. Whether or not it's an overt act conspiracy, Your Honor, and I would argue that the need for the government and the court to police the statute of limitations is even greater in a non-overt act conspiracy, because when you have overt acts, they're discreet and they're identifiable. But no matter what kind of conspiracy it is, there's no question that the government has the burden to show that it continues. But, okay, I'm just asking a very basic question. How could the government show that a conspiracy continued into the limitations period without showing an overt act? What's the other option? There's no question they have to show that it continued. That's the clear law. They can show it through conduct that continued into the limitations period. That's what Mr. Wise has done in his brief. The problem is, it's not for Mr. Wise to make that decision. It's for the jury to make that decision once the issue is raised. Well, what is the jury issue? I mean, you've got the government, it's a non-overt act conspiracy, but the government actually points to several overt acts, which are the payments made in connection with the Byrd conspiracy, the Phoenix Towing Service, and the fact that the representation with respect to the Harris conspiracy was not terminated until well into the limitations period in November of 2014. So the thing that concerned me was it's a non-overt act conspiracy, which I think means that the agreement is the conduct here, and by saying that the agreement is the conduct, you would seem to place the burden on the defendant to show that there was some conduct either withdrawing or terminating the conspiracy, and then my problem is that I think you have the obligation to show that the conduct was, that the conspiracy was terminated or that it was, that the defendant withdrew, and I don't see affirmative evidence of that. And what I do see affirmative evidence of is continuation, both in the continuation of the legal representation in connection with the Harris conspiracy until November 2014, and also these payments that were made to the Phoenix Towing Service. So the question I have is, whichever way you look at it, there's no affirmative showing that the agreement continued, that the agreement somehow was discontinued or that the defendant affirmatively withdrew, and then the government says, not only do you not have that, but we have overt acts that we don't even need, and those overt acts go into the limitations period. So given both of those, the absence of affirmative evidence of discontinuation and the specific overt acts with respect to both the Byrd and the Harris conspiracy, doesn't that become a difficult situation for you? I don't think so, Your Honor. The question is who gets to decide, and the answer to the question of who gets to decide is the jury. Let me talk about the Harris conspiracy. All right, well, I'd like you to answer this, but it's just who gets to decide. We all agree that an instruction is only required if there is something for the jury to decide, and the thing for the jury to decide here is if there was a disputed issue of fact as to discontinuation or if these overt acts that were cited did not exist in some way. And so where is the disputed issue as a matter of the evidence that brings this statute of limitations issue into the realm of the jury? Well, let me say, first of all, that the statute of limitations hung over this case even before the indictment was returned. There was a tolling agreement in this case that the government entered into, and the key date was July 2nd, 2014. The other thing that's undisputed is the overwhelming majority of the evidence in this predated July 2nd, 2014. So I can't think of a stronger case for the issue of statute of limitations to be put to the jury. Now, let me focus for a moment on the Harris conspiracy. Mr. Wise, in his rebuttal summation, invited the jury to convict based solely on the Harris testimony. That was under the 1957 prompt. And if you look at the indictment, and it's worth looking at it, there are two paragraphs, paragraph 36 and 37 of the indictment. The heading to those two paragraphs say, A.V., Ms. Bailey, gave Ravenel narcotics proceeds to represent L.H. Now, the gravamen of the 1957 object are discrete monetary transactions. There is no dispute that all of the money, and there are three payments that are listed in paragraph 36 and 37, and they exceed $10,000. There's no dispute that those payments were made before July 2nd, 2014. All of the payments made by Harris were made before July 2nd, 2014. So the evidence... Let me just ask you this. What about the government points to the fact that the defendant here did not withdraw from representing, from acting as Harris's counsel until November 2014, which is comfortably within the limitations period? Now, why wouldn't that just be fairly clear evidence that the conspiracy did go past July 2014? Because the gravamen of this conspiracy with an object of 1957 is a conspiracy to engage in illegal monetary transactions. It's not a conspiracy to represent somebody. It is discrete. It is finite. It is focused on the transaction, and the transactions themselves occurred before the limitations period. And in our view... But why isn't that just reimporting an overdraft requirement? You're saying that... I agree. So I agree that if the charge here was a substantive offense, I agree that all the evidence of substantive offense takes place before the limitations period. But that's not required... I guess... Why isn't that just surreptitiously trying to reimport an overdraft requirement? It's not. It's going back to Grunwald and saying, what's the definition of a conspiracy? A conspiracy was to accomplish monetary transactions. Those monetary transactions were accomplished before the limitations period. That's the end of the story. And there should have been a debate between trial counsel for Mr. Ravenel and Mr. Wise at the trial in the closing arguments about whether the fact that he didn't withdraw from representation until later, whether that meant that the conspiracy continued. And Mr. Ravenel could have argued, no, this conspiracy ended when those transactions took place. The jury would have decided. That would be just with respect to monetary transactions. It was a general conspiracy to money launder. And within the money laundering could be monetary transactions or concealment or whatever. But the basic thrust of the conspiracy was to money launder. And the subset of that might be a monetary transaction. But I think you're redefining in an unduly narrow way what exactly the conspiracy is all about. It was a broader thing than just a monetary transaction. It involved concealment and whatever. In the money laundering case, I wonder whether we can take 1956 or whatever to parse the conspiracy as fondly and single-mindedly as you wish to do. Once Mr. Wise focused the jury on the Harris testimony and he invoked the $10,000 payment, and that part of the conspiracy was restricted to section 1957. With respect, Your Honor, I don't think you can look at it as a broad-gauge conspiracy. It's a conspiracy with three separate objects. And they have to be evaluated separately. The government didn't ask for a special verdict for him in this case. That would have been—once he asked the jury and invited the jury to convict on the 1957 Harris wrong, he could have gone back to the court and revisited the statute of limitations issue. He could have gone back and asked for a special verdict for him. Let me ask you this. We don't know what the jury— Hold on. Doesn't it cut against your view that monetary transactions are not an element under 1957? No, Your Honor. 1956H is the conspiracy statute. 1957 is one of the objects of the conspiracy. The court was required not only to instruct the jury about the elements of conspiracy, but in order for them to intelligently consider the evidence in the case, to instruct them on the elements of each prong of the conspiracy. And indeed, the court did that. With respect to 1957, our view is he didn't go far enough because he told them that you need a monetary transaction, but he didn't tell them— Sorry, Your Honor. Where do you think that monetary transaction is an element of 1956H? It's not an element. That sort of cuts against your view of trying to parse and parse this whole count in a very narrow way. I disagree, Your Honor. I think that to say that it would have been sufficient—and this is not what the judge did here—but that it would have been sufficient simply to tell the judge what the elements were of 1956H without explaining to them what the objects mean would have left this jury at sea. And frankly, we think they ended up at sea. But you didn't answer that. You agreed with the instructions. Well, I want to be very careful here. Mr. Wise says there was an affirmative agreement. There was no affirmative agreement. Trial counsel for Mr. Ravenel candidly said in his reply brief that this was inadvertent. He made a mistake. There was no agreement here. This is not invited error. And our view is this is a clear case of plain error, as you can imagine, because Mr. Ravenel's conduct falls squarely within the safe harbor provision. Judge Wilkinson, I've read and studied your opinion in the Blair case, and you quite rightly say that Blair is about the least eligible person to take advantage of that safe harbor provision. I would argue to you, again, going back to the indictment, AB gave Ravenel narcotics proceeds to represent LH. Mr. Ravenel falls about as in the square middle of the heartland of what this safe harbor provision was intended to cover. And it was, as I read it, coming into this case late, it is about as plain and obvious, clear and obvious words of the plain error requirement. And you counsel, I want to say, first of all, I appreciate the vigor of your argument, and I've been very interested in it. But I'm wondering if a safe harbor provision can really cover a law firm which is accused of laundering close to $2 million in tainted funds. Is that really what the safe harbor provision is supposed to cover? Your Honor, Mr. Wise conceded at sentencing that the jury may have convicted on the Harris 1957 fraud alone, and the court at sentencing acknowledged that. And so that is the issue we've got to look at here. And on that prompt, Mr. Ravenel falls right smack dab in the middle of this safe harbor. Why is that the issue? I mean, so I see your brief basically does a move that I've seen with some regularity where it says because the jury found him not guilty on certain things, that equals a finding of the jury that he absolutely did not do any of those things. And I think the Supreme Court and this court have said that is not how you analyze jury verdicts, right? I mean, if there are seven elements of the counts he was acquitted on, a jury that believes beyond a reasonable doubt that he committed six of the seven elements and believes he committed the seventh by a preponderance of the evidence would still have to acquit him, right? It's perfectly possible to acquit somebody on a charge without concluding affirmatively that they did not do any of the things charged in that count. And that's, I think, why the Supreme Court has said that's not how we analyze jury verdicts. Well, I would cite Chief Judge Gregory's opinion in the Pitt case, which was a plain error case where you couldn't tell which theory the jury decided on because she didn't have a special verdict form. And the court took into consideration that on the remaining counts of that indictment, there were home juries. Here, it's an even stronger case because you have acquittal. But the point is, once the jury was invited to convict on the narrow conspiracy, and we look at the scope of that narrow conspiracy, we're left at sea. We don't know what the jury did. We know the jury wasn't told about July 2, 2014. They never heard that. The only instruction they got on dates in this case was the variance on dates that basically said, I should draw your attention to the fact that it doesn't matter. It does not matter if the indictment charges that a specific act occurred on or about a certain date. Well, I understand the variation on dates is kind of a standard approach. But when you put it together with the fact that the court didn't even tell the jury in his instructions what the purported length of this conspiracy was, by the way, the end date is August 15, 2017. Best I can discern, that may be when Mr. Byrd decided to cooperate. But that puts you into Grunewald land. That's just the government saying, once the agreement is reached, well, we can charge this any time we want to. And that's just, I would respectfully say, Judge Huygens, that that is not the jurisprudence. And under Yates, and we've made the Yates argument, you can't tell in this case. And Yates was a statute of limitations case. On Safe Harbor, Justice Scalia in the Griffin case, Mr. Whyte said Griffin, in effect, forecloses the argument. There's a very, very incisive statement by Justice Scalia at the end of that opinion about what juries are good at and what they're not good at. They're not good at figuring out in a void statute of limitations and statutory interpretation. They are good at finding facts. This jury was not equipped to do the job on this count that they needed to do. This count, the way it was framed for the jury in the rebuttal summation was that they may have gone off on a narrow theory here. And by the way, conscious avoidance charge just compounded the problem here. This is the only count where you had conscious avoidance. So the jury, in the absence of the Safe Harbor instruction, is left to convict Mr. Ravenel if they found that he was willfully blind to the fact that this was drug money. That's what the Safe Harbor is all about. Of course, a criminal defense lawyer is not supposed to be in the position of being criminally prosecuted for being retained. And there's no question here. Mr. Harris retained Mr. Ravenel. He had been invited on a federal narcotics case. Mr. Ravenel conducted a six-day suppression hearing. He was acting as his lawyer. Plain and simple. That's in contrast to the Byrd evidence. On the Byrd evidence, Judge Wilkinson, I just want to make it clear. We still think there was a live issue as to whether, for example, the $750 towing fee, which is less than $10,000, and there was a live debate that should have taken place in summations in this case about whether that act constituted continuation of this conspiracy into the limitations period. Defense counsel couldn't make a statute of limitations argument here because the judge said improperly, this is a matter of law. United States against Ed, which is a 1981 decision by this court, it's a 40-year-plus old decision where the judge there also said statute of limitations is not for the jury. And this court said, no, it is for the jury. And, you know, Mr. Wise, I would say, led the court into error because he made comments both at Rule 29 when it was discussed and during the charge conference that this is not for the judge, this is not for the jury, it's a legal matter for the judge. That's just not right. And Mr. Ravenel was entitled to that. And when you put together the double whammy of this jury not knowing about July 2nd, not knowing about the statute of limitations, and not knowing that a lawyer has a safe harbor provision, and remember, Judge Wilkinson, in Blair, you were reviewing the denial of a motion to the Smiths. That was the same issue in the Velez case in the 11th Circuit. Here, what we're talking about is giving the jury the opportunity to decide it. And that didn't happen. Now, yeah, it's a head-scratcher. It's a one-off. Excuse me, counsel. You frame it that way. But I think the issue is rather whether the evidence arrived at a point where the district court felt there was something to submit to the jury to decide, and whether the evidence put forward by the defendant justified submitting the case to the jury. And on the question of whether evidence does or does not justify a particular instruction, here, a statute of limitations instruction, we've given district judges a great deal of leeway on that. It's an abuse of discretion standard. And the reason for that is that the district court has a sense of the parts of the trial. And so I don't think it's a question of law or fact. It's simply a question of the strength of the evidence. And the district court may do some deference on that under the standard of review. We've always done that. Well, Your Honor, we would suggest that the standard is de novo review. But look, this case, like no other case I've ever seen, even crediting the government argument about what happened after July 2nd, 98% of this case was about what happened before July 2nd. Indeed, Mr. Byrd had been arrested and testified that he didn't engage in any further illegal activity. It was not for the judge to make some kind of threshold determination. The defense lawyer for Mr. Ravenel cross-examined Harris and Bailey on the timing of when they did, what they did. It was all set up to make an argument on the statute of limitations. The court robbed him of the opportunity to do that. That was not the court's function. I totally understand that, you know, district judges, it's a fray of battle. And yeah, I mean, but this is pretty fundamental. And it shouldn't have happened. And frankly, the government, I don't understand why the government didn't consent to a statute of limitations charge in a case like this, where the overwhelming majority of the evidence predates the limitations period where there was a tolling agreement. I don't understand why this was taken away from this jury. In a case where this jury rejected the government's case on 13 and 14 counts and didn't have the equipment that it needed in order to completely and fairly evaluate this chart, this count, with the benefit of an argument about what this evidence showed or didn't show in closing statements. That's what a trial's about. All right. Thank you, Mr. Zono. Mr. Wise? Thank you, Your Honor. May it please the Court, Leo Wise on behalf of the United States. A jury convicted Kenneth Ravenel of laundering millions of dollars in drug money for his clients through his law firm's attorney trust account. This Court should affirm. I'd like to start by addressing something Your Honor, Judge Wilkinson asked, and that was whether there was something for the jury to decide factually on the question of statute of limitations. And the answer is, and we've pointed out six examples of this, that there wasn't. The evidence of continuation, and counsel keeps flipping between conduct evidence and continuation evidence and talking about conduct evidence that predated July 2nd, but we get six examples in our brief of continuation evidence that was not challenged, that was not contested by other parties, by the other party. And that included that the agreement was for Ravenel to receive drug money from Byrd to provide a variety of services, some related to his criminal representation, but much of it unrelated to his criminal representation, to things like business transactions, and we've described this at length in our summary of the facts that were presented, bidding on a hotel, getting the rights to bid on a redevelopment project in Atlanta. And what that highlights is, and this is also something, Judge Wilkinson, that you pointed out, the defense here, and Judge Heitens, you commented on, the defense here has tried consistently to redefine what the scope of the conspiracy was in a far more narrow way than is supported by the charges or the evidence or what was presented to the jury. Simply put, when Mr. Zornow talked about a Harris conspiracy, there is no such thing. When he says we should have asked for a special verdict, as Your Honor pointed out, Judge Wilkinson, there were three objects of the conspiracy. 1956, A1A, promotions, A1B, concealment, and 57, structuring. He talks about, he makes reference to paragraphs in the indictment that talked about LB giving Ravenel L.A. his money. Importantly, as Your Honor wrote in Wilkinson, it's a fact pattern where someone else is giving money to a lawyer to represent someone with whom she does not have a Sixth Amendment relationship. But importantly, Mr. Zornow is talking about factual allegations. If you look at the actual paragraph in the indictment that talks about 1957, there is no Harris conspiracy. There is no Byrd conspiracy. It's a single conspiracy with Ravenel at his center using the trust fund at the Murphy firm like a dirty bank. And he did it for Byrd. He did it for Harris. And he was offering to do it for a third potential client, which the jury heard about, Darnell Miller, when the law firm was searched. So you can't cleave off a Harris conspiracy and claim that that object is defective, which is what they tried to do in their Yates argument and in their statute of limitations argument. This misrepresentation of what was actually charged infects all of their arguments. Yes, there was evidence of Harris, of his representation of Harris. And there was evidence that someone other than Harris gave him money. Let me ask you, your opposing number has said, look, all of the activity or the great bulk of the activity took place before July 2014 and did not seep into the limitations period. Given that, what would have been the harm of just taking an issue off the table by giving the jury the chance to decide it? If there's the evidence of continuation, I have no doubt that there is, but if there's the different evidence of continuation and all of the rest, it seems to me you would have had a pretty decent case before this jury. Why not just let them take it? Why not just let the jury decide it? What was the problem with that, given the bulk of the activity that occurred at times prior to July 2014? So to zero in on your question, your honor, he said, what was the problem? The problem was the instruction that the defendant provided to the court. And this court in Smith talks about when statute of limitations is properly raised, then the government has to prove beyond a reasonable doubt that the conspiracy continued. But the important concept here is when it's properly raised. Here, in the original submission of jury instructions that the both parties submitted, and Mr. Zornow is incorrect, and we have this, we cite this in our supplemental appendix, the Defense Act submitted a set of instructions, including elements for 1957 that did not include the State Harbor. I'll address that later. But in that submission, there was no statute of limitations instruction. Instead, right before the jury was to be charged, they produced this incorrect instruction, which said the jury had to find, first it said they had to find an overt act by a preponderance of the evidence, which of course was wrong on two fronts. And so at the 11th hour, as what happens in trials, and this is why, to your honor's point, Judge Wilkinson, trial judges are given discretion on this. At the 11th hour, we're standing in the courtroom confronted with something that is clearly incorrect. And at no point did the defense tender something that was correct. And they did a couple things in their brief here that were inaccurate. The final- I have a question before you say that. What, in the government's view, would have been a legally correct instruction about the statute of limitations? I think it would track the language in the cases that we see that the government has to prove, assuming the most conservative approach, that the conspiracy continued into the limitations period, and it would not introduce preponderance because that's obviously the wrong standard. And also, it would not frame it as an element, which is the other mistake that the defense made really compounding the error. They got further away from a correct instruction as we got closer to actually instructing the jury. And so that's why there was no instruction. It wasn't because we were vociferously objecting to the idea of them deciding this. It was because what the defense had given the court was plainly incorrect, and in a fundamental way. And our real concern was telling the jury they could find an element on a much lower standard would have been a far greater error than the one that they claim occurred here. Now, you're saying, to follow up on Judge Hyten's question, you're saying that a correct instruction would have had beyond a reasonable doubt, right? Yes. And we had this. Sorry. Would that have been so difficult to correct? Well, the issue was standing in that courtroom, no one said that was what was correct. The defense doubled down. And when I said, look, they haven't even explained preponderance, and this was in our brief, and the cases they cite don't stand for the proposition that the jury cites this by a counsel for Mr. Adams said, well, we can explain preponderance. So at no point was there a submission by the defense that said, we get it, we're wrong, it's actually not an element, and it's by beyond a reasonable doubt. Let me just ask you a question that I asked Mr. Zornoff as well. So, okay. So I agree the government has to show it continues, but then we have this case law that says, once it starts, it's presumed to continue. We know that if the defendant argues he withdrew, the burden is on him. If the question is, there is a conspiracy, and the question is whether it terminated, who bears the burden? In the government's view, who bears the burden of proof on that question? Once there is a conspiracy, and the question is whether it's ended. So I think that really two things. I think conservatively, one could argue we should prove it because it sort of takes the issue off the table. But I think Your Honor is right that the cases Your Honor talks about indicate that it is the defense that has to show termination. I think here, to Judge Wilkinson's point, the clear evidence, the overwhelming evidence is that it did continue, and there was no dispute as to that. The money sat at the Murphy firm, and this is where evidence of the agreement is really what counts, not conduct. As we point out in our brief, evidence sat in the Murphy firm in those four Byrd ledgers well into the fall. The person that was giving Ravenel money for Harris, she got a target letter in the fall, and then went to Ravenel to find out what to do. Also clear evidence that the conspiracy continued. So the record in this case is overwhelming that it continued, whether it's our burden to prove it or whether the defense has to affirmatively establish that it terminated. And they didn't dispute, as I said, really all of the continuation evidence. The only evidence they disputed among this kind of post-July 2nd evidence is conduct evidence, like what the purpose of the tolling payment was. But that's sort of like the move they keep doing trying to suggest there was a Harris conspiracy that was a separate object, which plainly there was not. They keep trying to confuse conduct evidence versus evidence of the agreement and say, well, the jury should have decided whether all the conduct evidence prior to July 2nd indicated that the conspiracy no longer continued. But we don't have to prove conduct evidence ever. So the idea that that would show that the agreement ended, I think, is, to use Mr. Arnaud's word, a red herring. MR.  The way I look at the proof scheme is that there's a shifting burden throughout. You bear the initial burden of proving that a conspiracy existed in the first place. And then the burden shifts, as I understand it, to the defendant to prove withdrawal or discontinuation or an E.S. But you bear the initial burden. You've got to show that there was a conspiracy here and that there was agreement and all of that. And then there's at least a burden of production on the defendant and probably a burden of proof to say, well, yes, but the agreement terminated and our counsel withdrew. And here's why. Here's what we have to support that. But it seems to me you bear the initial burden on this. And then it seems to me that the burden shifts. And ultimately, the government, that's probably the nature of a burden of production to get an evidentiary instruction. And ultimately, the burden comes back. It's almost like a Title VII case here, that the burden ultimately comes back on the government to prove beyond a reasonable doubt. But as I see it, the burden belongs initially with you, and then it shifts. And it shifts all within the framework of the beyond a reasonable doubt standard that the government bears on every single count. So I think, Judge Wilkins, I think the way you articulated it is a far better articulation in response to Judge Hyten's question than perhaps I did. And if you look at what the jury, and we addressed this in our harmless error analysis, if you look at what the court actually told the jury, he instructed them that they had to find the conspiracy that's charged in the indictment existed. And he gave them the indictment, and the indictment alleges that there was a conspiracy from August of 2009 to August of 2017. So, of course, that encompasses both, that encompasses the period covered by the statute of limitations, and even goes far beyond it. And I think you're right. I think if properly raised, based on a factual, an appropriate factual predicate, which I don't, I think, Your Honor, zeroed in on wasn't presented, and I think based on a correct legal instruction, then the affirmative defense of the statute of limitation could be raised. But I think, to your point, the distinction between continuation and termination is different. I think there was, the jury was instructed they had to find the existence of the conspiracy in this period, as indicated in the indictment, and there was overwhelming evidence of that. And I think at the 11th hour, and they, you know, the other thing the defense does here is they try to say, well, the court said as a matter of law, there shouldn't be, you know, statute of limitations are decided. And that's really not an accurate summary or statement of what was decided. As we pointed out when we provided the full quote from that discussion, again, as the jury was literally waiting to be instructed, it was a discussion about withdrawal, it was a discussion about statute of limitations, it was a discussion about a number of things that the court found had not been properly raised. And the reference to matter of law, I think, was a reference to arguing at Rule 29, and then for a new trial motion, whether any of those issues were at play. Because by that point, it was, they hadn't been properly framed factually for there to be further instruction on. Mr. Wise, Mr. Wise, you conceded that this conspiracy ended in 2014. You agreed, didn't you? No, Your Honor. On page 2, it says, from 2009 to 2014, the period of the money laundering conspiracy that the jury convicted him of. You conceded that in your brief on page 2, didn't you? Wait a minute, am I wrong? Am I reading something incorrectly? I think, Your Honor, what we meant… I'm not asking what you meant, I'm saying what you said. On page 2, you said that it ended in 2014, correct? But that's not what the indictment said. The indictment is not evidence at a trial. As a matter of fact, a petted jury, if they're involved in a grand jury, they're disqualified to be a trial jury. That's just the indictment for purposes of legal jurisdiction in bringing the charge. It's not evidence. The indictment, are you saying that makes it in case… You conceded in your brief that it ended in 2014. Your Honor, I… Then later on, you say it on page 26. Well, there's some evidence they could have used. Isn't this the kind of case that exactly Congress decided these cases, these charges would have a statute of limitations? It's not for the court or judges to move that around and change that. Congress did. And this case is more importantly so because it is incredible, dangerous territory of a Sixth Amendment right to counsel. Because basically what you're saying is that if someone said, this is hypothetical, not this case, but that is, okay, I'm charged with drug trafficking, and I'm giving you a fee to represent me, all right? And then as later the person comes and says, well, you know, I told my lawyer that these were drug proceeds, monies. Then basically that's all they'd have to do, right? Because then, because you're saying the representation of that person is the act of conspiracy. Goes to say, well, it's still in his escrow account. Well, he got paid to be a lawyer. I mean, so, and then you say there was no instruction as to safe harbor. And then Judge Hyden rightly put you through the scenario, Mrs. Norland, through the question of when does it end, who has to prove what? If you had no evidence of anything happening after 2013, you would say the presumption would be that it still continued, notwithstanding any evidence at all, right? Because you'd say, well, it continues. It's presumed to continue. And they didn't say it stopped and didn't withdraw. Is that your, would that be your argument? No, Your Honor, because I think there was overwhelming evidence that it continued. And if I may, just to address, we- It's overwhelming evidence that it, okay, what in 2014 that stopped it then? Because you conceded that in your brief. And I used to, normally in the Fourth Circuit, we talk about you put it in your brief. You can't come here and argue differently. But anyway, what made you say that it ended 2014 in your brief? So we, looking at the sentence you're pointing out to, Your Honor, you have to look at the sentence before that. We didn't concede that the money laundering conspiracy ended in 2014. The sentence before that says that he represented him as his counsel back in the 1990s. That helps you? And what the sentence before references is the period of representation, which ended in 2014. That's the problem. He's a lawyer. He's supposed to represent people. That's the problem. But what I'm interested to hear, you are taking, well, one of the most precious rights that we have in our criminal justice system is to have independent counsel. Independent counsel. And then you take, well, he represented him back in 1990. What does a jury have to do with that? That's why, in a case like this, you almost have to explain what a statute of limitations is, what a safe harbor is. Because otherwise, the jury's like, well, you know, he was a lawyer. Well, you're a counsel of record. When I used to practice law, you can't just pull out. A court has to allow that. For example, all that's entwined with representing somebody. And now you railed against a statute of limitations. Not rail, I should say. You objected to the statute of limitations instruction. And the court gave a reason that I really don't understand. It was too late in the day. I thought instructions always came at the end. And they asked for a bill of particulars that would give us a particularity. That was denied in this case. Your Honor, if I can just return to this, the concession. I want you to return to my question, which you have not answered yet. What made you say that it ended in 2014? So that's not what we said. We said 2009. Wait a minute, wait a minute. You didn't say what I just read? No. Explain why you said that. The rest of the sentence, the full sentence, is from 2009 to 2014, the period of the money convicted Ravenel of Byrd sold thousands of pounds of marijuana, generating millions of dollars in cash. That period, 2019 to 2014, is when Byrd was selling the drugs and pushing the money through the firm. It's in the 2009 to 2017 period of the conspiracy. But how do you read out of – I mean, I know you're a good counsel, Mr. Wise. But how do you read out the parenthetical part that 2009 to 2014, comma, the period of the money laundering conspiracy that the jury convicted him of, comma? You read that out and then just say, well, we're really talking about I'm selling million dollars in marijuana. I mean, I know interpretation is tough, but my goodness, that's plain English. Well, that's what – that period is within the period of the conspiracy. And it's relevant because that's when the money was moving through the firm. I'm not questioning that part of it. Okay, so it is. But you said that it ended in 2014. I don't know why you're so hard-pressed to deny what you said. I don't think that's what we said respectfully, Your Honor. Jeff, wait a minute. Wait a minute. Wait a minute. We don't get this straight. You said you didn't say that it ended in 2014? That's right. Okay. Well, what part of English do I understand in that sentence? So, again, that period, which is within the period the jury found, is a reference to when the money was moving through the Murphy firm. It did – and when Byrd was selling drugs. Byrd was incarcerated in 2014 and at that point stopped selling, as we say, thousands of pounds of marijuana generating millions of dollars in cash. But the conspiracy was not – the evidence was not that the conspiracy stopped in 2014. The evidence presented and what was argued to the jury was that it continued until Byrd started cooperating, because he continued to engage with Ravenell to further the object of the conspiracy well after 2014. And there was – Your Honor, the government is like the old saying, head I win, tail you lose. Everything you say doesn't mean what it seems to say. And then you talk about the saying that it's a matter of law as to what the statute of limitation – it's not a question of whether or not evidence may have been sufficient to a jury to find it. The question is whether or not the jury should have been instructed as to what this meant in terms of what Congress meant as a limitation, a statute of limitation. I mean, how do you get a fair trial and they're not even instructed that that even exists? Based on this trial, as long as he was counseled, he could have been counseled for – the money could have stayed in his escrow account and used in that for 20 years. This conspiracy still continued because he still had some money left in the escrow account. That's the way the case was framed, and you argued it here today. That's one of the things you tell us. We know the conspiracy continued because there was still some money in the escrow account. And that's all in time with representing someone. And that's the problem. I think this is a very dangerous case for particularly any counsel, because basically somebody said, okay, I told them that that was the money for. And for example, what was the blind avoidance? What's the willful avoidance here in this case that you put on? I thought everything you said was deliberate, intentional, short. Oh, boy, what's the purpose of – how does that – and this is the only count you gave that instruction on, the one that – this is the only one they convicted on. What was the purpose of putting that in here based on the evidence? So the conscious avoidance was that Ravenel instructed Byrd that not a penny – and this is what was proven to the jury – not a penny of money should ever come from Byrd. It always had to come from third parties so that Ravenel could claim he didn't know the source of the money. And during the charge conference – That's not willful – that's not willful avoidance. That's still alleging that he deliberately was instructing how to hide or at least conceal the conspiracy. He said, I don't want to know. Listen, I'm leaving the room. I don't know. I don't know anything about anything. I don't want to hear that. That's – nothing you put on was about blindness or avoidance. That's exactly what he did by saying, I don't want to know where this money's coming from. It has to come from someone else. I thought you said he told him. I thought you said he told him. He said, I don't want a penny from you. And he never got a penny from him. And in the charge conference, I'll – Counselor, didn't your case say that Mr. Byrd told him what the source was, what the whole purpose was? As a matter of fact, you said that counsels – that was the whole thing. I can tell you how you can make money on marijuana. Isn't that your case? So this court – Isn't that your case? You want to void my question? It's both. It's both. And this court has said where there's both conscience avoidance and actual knowledge of conscience avoidance. Instruction is clear. And that's Vincent. And that's Avis. And at the charge conference, what – we pointed out this Akulu transaction. This crazy – I mean, you talk about a legitimate lawyer. This crazy transaction of cash going to Jamaica, moving to a Jamaican law firm, to a New York real estate dealer, to a Ugandan diplomat that Mr. Ravenel had never met and never knew and then went back to him. And in the charge conference, this is what Mr. Ravenel's counsel said about that Akulu transaction. He said, the evidence is that nobody testified that Mr. Ravenel knew anything about Akulu. He testified Akulu. He didn't know Mr. Ravenel. Mr. Byrd testified that he didn't know Mr. Akulu and didn't know anything about this. There's no affirmative evidence that Ken Ravenel had anything to do with that. That's about as clear an example of conscience avoidance as I can think of. He didn't want to know. He knew that when money came from Mr. Akulu, who he'd never met, he was going to take it, but he didn't want to know how it got to him. And that's conscious avoidance. To your point about representation, three of the four Byrd ledgers had nothing to do with representing him. Three of the four were the business ledger, the Overtown Reborn, which was a redevelopment of a neighborhood in Atlanta, and the hotel ledger. So this case isn't about representation exclusively. It's about all the other stuff that Ken Ravenel did for Mr. Byrd that had nothing to do with representing him. In fact, the representational part is really the tail end of it. Byrd was arrested in 2014. So much of the conduct occurred long before that, and it was about 1.8 million moved into this firm. 1.2 million sloshed back out, and it went to consultants and other business ventures and other lawyers in civil practice handling transactions. The purpose of the conspiracy, back to our original discussion about what its true object was, was to take Byrd's illicit proceeds and inject them into the economy in illicit ways, if that's a word, through things like hotels and things like entertainment businesses. But Mr. Wise, you're sliding into the evidence of the conspiracy and moving away from the statute of limitations. That's the question. And you have monies that were sent to third-party businesses after that period, July 2? We don't have to prove that money was sent. I didn't ask you that. Do you have any? No, you don't. No. What you have is, what you said, $750 because the government told you, right? We do have examples. And that was to preserve automobiles that had been purchased with drug money, which was one of the purposes of the conspiracy, was to move drug money into the legitimate economy to Mr. Byrd's benefit, including through the purchase of luxury automobiles. So, I'd say— You say, so counsel, so counsel can't—representing somebody, because you've done the forfeiture, he or she is supposed to say, well, they forfeited. I guess my client is guilty. I'm not going to do anything to preserve their property before we have a chance to defend that. That's what you're looking for? I think you can't use money that you know is drug money to do it. I mean, I think that's the problem for Mr. Rabanel. Wasn't that the money—wasn't that part of the escrow money? Yes. And evidence was that Mr. Rabanel knew that was drug money. So, he knew that was money, drug money. So, therefore, he, as counsel, could not protect his client's interests. So, otherwise, if he—so, part of the conspiracy would be arguing in court for him, too, right? But if he presented an argument or motion in limine, that's conspiratorial, because, right, he used drug money to pay for that representation. Is that your whole theory? It depends on how he got the money. That's what this court said in Blair. Mr. Rabanel got—didn't get any money from Byrd. Just like in Blair, he got money from third parties, people like a lawyer in Houston that he didn't know named David Levine. And also, importantly, just like in Blair, Mr. Rabanel gave drug money to other lawyers to represent people he didn't represent. And we describe this in our brief as a factual statement. Mr. Byrd's brothers were arrested, and Mr. Rabanel paid their lawyers with Mr. Byrd's drug money and then concealed the source of it by claiming it came from someone named Rupert Castle, who was the father of another client of Mr. Rabanel. That's exactly what this court said in Blair the safe harbor didn't cover. And that was undisputed as well. So, this case falls squarely within the limitations on the safe harbor that Blair articulated. And that is, in a word, you can't use somebody else's drug money to pay for representation. That's not what the Sixth Amendment covers, because the Sixth Amendment talks about a individual right to counsel. Joseph and Harold Byrd had no Sixth Amendment relationship with Kenneth Rabanel. They had their own lawyers here in town. But Mr. Rabanel took Mr. Byrd's drug money and paid those lawyers and concealed from those lawyers that it was even coming from Mr. Byrd. And that is clearly outside the safe harbor. And that's why we didn't ask for the instruction. I mean, the defense says it was inadvertent. Somehow they say it was inadvertent that we didn't ask for it. We knew full well about 1957. And I think it's preposterous to suggest that they didn't, that all of these experienced lawyers representing a criminal defense attorney charged with money laundering, charged with 1957 money laundering as an object of the conspiracy. Suddenly discovered after the trial that in 1957, there's a safe harbor provision. There's sort of a dim light bulb went off one day back at the firm. It's preposterous. That's why it's clear that this was invited error. They submitted a set of jury instructions that we had put together what the elements of the offense were. And this is in the supplemental appendix. They redlined it, added all kinds of changes. But they never, but they agreed that the elements of 1956 age did not include the safe harbor. And this is exactly what the court said. It seems like the problem in this case is, and it's no question you have a lot of evidence, obviously, in terms of the conspiracy and all those things. But the question becomes, how do you take away from the jury the question of statute of limitations? We concede there is a statute of limitations. And even if there was a presumption that it continues, you would have gotten that instruction, I suppose, that, well, it's presumed to continue. But still, the jury has to be able to make that decision. It's not as a matter of law. And it seemed like the court was saying, well, it's too late in the day. It hadn't been framed that way. And then the question of whether or not to withdraw. I mean, that's what instructions are. That's the work of what we do here. But to say that the jury should, they had no clue what, there wasn't even a statute of limitations. And how would they, how can anybody, see, you can debate what burden it is and whether it shifts. But how is it debatable that the jury has to be instructed as to being able to somehow carry out what Congress put in as a limitation on the crime? And the fault for that. It seems to me, that's so difficult. I mean, the question that Judge Wilkinson asked you, why wouldn't you do that? Why wouldn't it, why wouldn't, why shouldn't it be an instruction in that regard? You said overwhelming evidence is overwhelming evidence. But a lot of the cases, you know, you lost quite a bit in this case in terms of overwhelming evidence. All those things you talked about. Jury, and I agree that different elements they may have found lacking, but pretty much was your whole thing was there was a conspiracy here. And this is the only one that you didn't even prevail on. And that's what the question would not have a statute of limitations and all these other things. So, it's, it leaves some ponders, some questions. In a way, unless counsel have other, unless you have other questions of counsel. May I just respond to your question, Judge? I think the fault here lies not with the district court, because the fault lies with the defendant. I didn't say the fault lies with the district court. I'm asking about you, too. I didn't know it. I'm talking about in terms of instruction, because the whole idea, you know, you're the government and you want the child to be as much in accord to the law as possible, right? It's an affirmative defense. I don't raise affirmative defenses. I don't submit instructions on affirmative defenses. This was 100% the defense's obligation, and they botched it. And that's why it's not reversible error. They don't get past the first factor in Hassan. They never submitted an incorrect instruction, and it cannot be reversible error for the court to conclude that it should not give an incorrect instruction. Imagine what we would be arguing if the jury had been told, as the defense wanted, that you could find an element of the offense on a lower evidentiary standard. Imagine the arguments they would be making, that it infected the jury's deliberations. We have no idea if they applied that standard to all of the other elements. They would have been given contradictory instructions. You could have easily said, you know, what the correct step part of it is. I didn't know what it was. I'm not a defense lawyer, and I don't know what affirmative defense is, what the burden is for affirmative defenses. I'm under no obligation. We have to prove the elements. If they properly raise an affirmative defense, we may then have an obligation to rebut it. But here they never raised it properly. And nobody had the clairvoyance to know what, in fact, they were getting at, because it kept shifting. First, they said it was an overt act. They stuck with this preponderance thing. Then they said it was an element. It was like gum and hair trying to figure out what it was they wanted and why they thought it was warranted. And it was on them to make that clear. And that's why it's not reversible error of the district court. MR. BOUTROUS. All right. Thank you, Mr. Wise. And Mr. Sornow.   Thank you, Your Honor. Let me just hone in on the dialogue you were just having. First of all, the district judge did not rule that he wasn't going to give a statute of limitations instruction because the instruction proffered wasn't correct. He said it's a matter of law. It's not for the jury. I'll take it up if necessary after the verdict. But let's look at the instruction that was proffered. And Judge Hyten asked the question. And I don't know where this notion that they said it was an element comes from. Here's what it said. There is a limit on how much time the government has to obtain an indictment. For you to find the defendant guilty of conspiracy as to count to, the government must prove by a preponderance of the evidence that the alleged conspiracy continued after July 2nd, 2014. How difficult would it have been? The government doesn't know that the correct standard isn't beyond a reasonable doubt? Well, Mr. Sornow, if this element thing comes from what your client's lawyer said after the government objected, this is defense counsel, quote, this is in the statement that you claim this is where defense counsel offered to fix it. He said it's a factual matter. It's an element like anything else. Defense counsel is the person who introduced the legally incorrect notion that this was an element. Well, it is tantamount to an element in this regard. Once it is raised, the burden is on the government to prove it beyond a reasonable doubt. And it would have taken all of five minutes to revise that instruction. The government should have proposed that. Wait, wait, wait. That strikes me as a big conception then. It would have taken five minutes. Why wasn't the burden on the defendant who wanted the instruction to take all of five minutes to submit a legally correct instruction if you want to argue the district court committed reversible error by not giving it? The defense lawyer said that can be fixed. And the court ruled it's a matter of law. That's what happened. And even, you know, we talk about burdens and we talk about. That sounds like a futility argument. That sounds like saying I didn't have to object because it's obvious the district court would have overruled it. We do not allow that as a general matter, right? We don't allow it to say, why did you not raise that hearsay objection? Well, because the district court judge by that point had made clear it wasn't sustaining any hearsay objections, so I stopped making them. We would review that for plain error. I don't think it's fair, Your Honor, to say that the defense didn't raise this issue. It was raised in Rule 29 twice. There were two instructions proffered. The court said you have to exception. We're moving on. I don't think you can say this is a case where the defense sat on their hands. That's just not the case. And in terms of burden, sure, you can argue about burden. But even if this was a withdrawal case, the matter would have been properly put before the jury. It would have had to have been put before the jury in order for the jury to make the assessment. So, you know, Mr. Wise is an excellent advocate in terms of marshaling the evidence. Our point is that argument should have taken place in front of this jury. And the jury was just left hanging. They didn't know about July 2nd. They had no clue. And as Justice Scalia says in Griffin, if you don't equip a jury to understand the statute of limitations, they're not going to be able to figure it out on their own. And that just was a fundamental unfairness in this case. When we get to the safe harbor provision, you know, he goes on and on and on about the Byrd part of the case. But what about the Harris part of the case? What about the part of the case where in his rebuttal summation, when he was responding to defense counsel's argument that if you disbelieve Byrd, you've got to return a not guilty verdict on every count, his answer was you don't have to rely on Byrd. You can rely alone on Harris. And once he did that, and this is something he conceded in sentencing, that is that the jury could have convicted on that basis alone. And the judge acknowledged that. And if you look at that set of allegations and that evidence, that is what falls squarely within the safe harbor. The money was paid in order to retain. The notion that it was paid indirectly, and that somehow brings it into Judge Wilkinson's opinion in Blair, is nonsense. The man was sitting in prison. He asked his girlfriend to go out and collect funds that were owed to Mr. Harris and to pay them to Mr. Rabenow to retain him in this case. Plain and simple. That's it. And that money was paid before July 2, 2014. If that isn't right smack dab in the heart of the safe harbor, I don't know what possibly could be. I see the clock is red, so I don't want to overstay the welcome of the court unless you'd like me to continue. All right, Mr. Zorno, thank you very much, Mr. Wise, as well. Thank you for your arguments. We're virtual and can't come down and shake your hand as we do in the Fourth Circuit, but know very much we appreciate your arguments in the case. We wish you well and hope that you will stay safe. With that, you're welcome. Thank you, Your Honor. You're welcome. We ask the clerk to adjourn the court signing that. This honorable court stands adjourned, signing that. That's the United States and its honorable court.
judges: Roger L. Gregory, J. Harvie Wilkinson III, Toby J. Heytens